## SUPREME COURT.

JOHN J. HEARD, adminis'r, &c. agt. JULIA CASE and others.

*Construction of apparently repugnant clauses in a will.*—It is a rule without exception, and which is not subject to any criticism, that the testator's *intention* is to be observed, when it can be collected from the whole will, and that no part of the will is to be rejected, if it can stand consistently with the residue, and with the general intention disclosed by the whole instrument.

The testator, by his will, gave to his *widow* the use, occupation and income of *all his estate* both real and personal, *during her natural life.* He then gave to two grandsons each $2,000, to be paid to them when they arrived at the age of twenty-one years, the *interest to be applied to their education and support, in such sums and at such times* as their guardian might think proper, and the *principal* to be paid to them after they arrive at the age of twenty-one, or at the discretion of their guardian; with a provision, that in the event of their dying before they came of age, so that if either leave children, such children to take their father's share.

*Held,* that it was manifest that the testator intended by the legacies to his two grand children, to provide for their support and education during their minority; that the bequest of these vested legacies to the grand-children, with express time of payment, and the direction to apply the interest in the meantime, must control the general gift of the life estate to the widow and constitute an exception to it; so that these legatees are entitled to the interest on their legacies during their minority, and to the principal when they become twenty-one, although the widow may still be living.

The testator also gave to the widow of a deceased son $250, to which no time of payment was set, *held,* that this legacy was not payable until the determination of the life estate of the testator's widow.

*Orange Special Term, June,* 1861.

APPLICATION to the court for the construction of the will of Daniel Case. The facts will fully appear in the opinion.

EMOTT, Justice. The rule that where two parts or clauses of a will are inconsistent that which occurs last in the instrument must prevail, as being the latest expression of the testator's mind and purpose, is in a great measure a technical rule of construction, and is not always adhered to. Where the latter portion of a will contains specific directions or bequests, apparently inconsistent with a previous general gift, it is often if not always necessary to qualify the latter by the former, in order to effectuate the manifest intention of the testator. It is a rule without exception, and which is not subject to any criticism, that the testator's intention is to be observed, when it can be collected from the whole will, and that no part of the will is to be rejected, if it can stand consistently with the residue, and with the general intention disclosed by the whole instrument. In the present case, the testator, Daniel Case, died in 1857, leaving a family consisting, so far as appears, of a widow advanced in life, a daughter married, two grand-children, sons respectively of a deceased daughter and son, and the widow of such son.

Daniel Case left a will, by the first clause of which he gives to his widow, the defendant, Julia Case, the use, occupation and income of all his estate, both real and personal, during her natural life. He next, and immediately,

proceeds to give to his grandson Jesse A. Case, the sum of two thousand dollars, to be paid to him when he arrives at the age of twenty-one years; the interest to be applied to his education and support, in such sums and at such times as his guardian may think proper, and the principal to be paid him after he arrives at the age of twenty-one, or at the discretion of said guardian. Then follows a similar bequest, of a like amount, to his grandson Daniel C. Budd. The will declares that these bequests are to revert and fall back into the estate, if the legatees should die before they arrive at majority, and the testator directs the guardians of the grand-children, in the event of such death, to pay over all moneys in their hands arising from principal or interest of such bequests, to the testator's daughter, Frances J. Anderson, who is subsequently made the residuary devisee and legatee. This direction may imply that the testator considered that the life estate of his widow would be determined before these moneys would become payable by the guardians of his grand-children, and affords some support to the construction that none of the legacies are payable until the death of the widow. But the testator probably reasoned upon natural probabilities and the chances of human life, in the expectation which was in his mind when he inserted this clause in his will. Besides, the clause is qualified by a subsequent limitation, which gives the share of each child, if he die before twenty-one, to the children of such child, if he leave any, and only in the event of the death of either without issue, to the residuary legatee.

After the clauses which have now been adverted to, follows an absolute bequest to Nancy, widow of the testator's son Jesse, of two hundred and fifty dollars, to which no time of payment is set. Then comes the residuary devise and bequest of all the estate after the death of the widow, to the testator's daughter, Frances J. Anderson, in fee. The testator adds the clause which I have mentioned, mod-

ifying the bequest to his residuary legatee of the amount given to his grandsons, in the event of their dying before they came of age, so that if either leave children, such children are to take their father's share. This is all which the will contains, except the appointment of executors.

It is manifest that the testator intended, by his legacies to his two grand children, to provide for their support during their minority, and their education. The facts admitted by the pleadings as to the situation of the family, go to strengthen this conclusion; but the inference is irresistible from the will itself. The interest of the legacies is directed to be applied to the education and support of the minors, in such sums and at such times as their guardians should think proper, during their minority, while the principle is to be paid to them when they become twenty-one years of age.

If the construction contended for by the widow be correct, this intention must have been entirely disappointed, unless she should have happened to die very speedily; and according to the fact as it has turned out, and the ordinary probabilities of life, it has been defeated, and will continue be of no effect for at least a considerable period, and that the period in which the children are likely, if at all, to be in need of their ancestor's bounty. On the other hand, if we hold these legacies to be given out and out, and taken from the widow's interest in the estate, still that will not defeat the provision for her. The two clauses are not repugnant altogether, but that for the benefit of the children is inconsistent, so far as it goes, with the literal import of the legacy to the widow.

The courts have gone a great way in construing and limiting clauses in wills which are apparently repugnant, and effectuating the intention of the testator, in spite of the apparent contradiction. In *Sherrut* agt. *Bentley*, (2 *Myl. & K.*, 149,) after certain legacies, there was a devise of all the testator's real and personal estates " unto his wife, her

heirs, executors, administrators and assigns forever." The testator directed that none of the legacies should be payable until twelve months after his wife's death. He then gave some other legacies, and then proceeded to devise the residue of his real and personal estate to certain other persons, to be equally divided among them at the decease of his wife. Sir John Leach, M. R., and after him, Lord Brougham, on appeal, held that the will must be construed to give the wife only an estate for life, and to give the property over to the persons named afterwards, in spite of the clear and even technical language of the devise to the wife. So where a testator, after devising the whole of his estate to A., devises Blackacre to B., the latter devise is to be read as an exception to the first. (*Cuthbert* agt. *Lemprier*, 3 *M. & S.*, 158.) Authorities of similar purport might be accumulated, but these are sufficient to show the manner in which the courts have dealt with such cases.

Applying such principles to the present will, the result will be that the legacies to the children must be treated as exceptions to the provision for the wife. Otherwise the express directions of the testator as to the time and manner of payment, and his manifest purpose in providing for his grand children would be entirely disappointed. These legacies are given for a declared purpose, and there is a direction as to the application of the fund, which is as express and specific as the gift, and which is intended to serve that purpose.

The legacies to the grand children are vested and absolute. The gift is to the children, payable when they attain twenty-one, and the interest is given for their benefit in the meantime. It is just as unqualified in terms, and as explicit as to the time of payment as the devise to the widow. This feature in the case distinguishes it from *Bouditt* agt. *Young*, which is reported before Mr. Baron Price and Lord Ch. Parker, in 9 *Mod.*, 93, and in the House of Lords in 5 *Bro. P. C.*, 54. There, after a general gift of

all the estate to the wife for life, there was a legacy to a grandson and grand daughter when they attain the age of twenty-one. There was no disposition of the interest in the meantime, nor any evidence of an intention to provide for their support or education by the fund. Lord Ch. PARKER held that the legacy was payable at the majority of the legatees, notwithstanding the widow was living. His decree was reversed in the House of Lords, and upon the ground that the legacy was contingent, and no intention was manifested for its payment during the life estate. The vesting of the legacy depended upon the legatees' attaining majority, but its payment upon the expiration of the life estate. There is no opinion reported in the House of Lords, but this is the obvious doctrine of the case.

The case of *Adams* agt. *Clerke*, (9 *Mod.*, 154,) which is cited by the plaintiff, is not at variance with the views I have indicated. A testator devised specific legacies to his grand children to be paid at their respective ages of twenty-one years or days of marriage. He also gave other specific legacies, and by a subsequent clause appointed that all the legacies in his will be paid one year after his death. The court held that the two clauses should be so construed as not to be repugnant, and that the discretion for the payment of all legacies one year after the testator's death should apply only to all for which no other time of payment was set. This is an application against the legatees of a similar principle to that which is invoked in the present case in their favor, or rather the immediate effect of the rule is different in the two cases. The direction for the payment of the legacies at twenty-one in the present will, together with the direction to pay interest in the meantime, must control the general directions to defer distribution until the death of the widow. The same direction in the case in 9 *Mod. Reports*, prevented the legatee from claiming payment, under a general clause which would have made a speedier distribution. I do not collect

from the case of *Thackeray* agt. *Hampson*, (2 *Sim. & Stu.*, 214,) which was also cited by the plaintiffs counsel, anything material to the present question.

Upon the whole I am of opinion that the bequest of vested legacies to the grand children, with express time of payment, and the direction to apply the interest in the meantime, must control the general gift of a life estate and constitute an exception to it. So that these legatees are entitled to the interest on their legacies, during their minority, and to the principal when they become twenty-one, although the widow may still be living.

The legacy given to Nancy Case, now Nancy Knight, presents a different question. The testator directs no time of payment of this legacy. The law makes such a legacy payable at the expiration of a year, when there is no intention manifested to fix a different time. The general bequest of the income of all the estate to the widow however in this will, imports a design to make legacies which are to come out of the fund, payable at the termination of the life estate. In the case of the grand children this is controlled by the manifest design to give them the income of the moneys set apart for their use immediately, and by the express direction to pay them the principal at their majority. The legacies must either be treated as exceptions out of the bulk of the estate given to the widow, or these evident intentions of the testator be altogether defeated. But in the legacy of two hundred and fifty dollars there is nothing to control the time of payment fixed by the bequest to the widow. That may stand and the other be literally observed. I am of opinion that this legacy is not payable until the determination of the life estate.

A judgment will be entered in accordance with these principles. All parties will have their costs from the fund.